IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUSTY R. F., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 21-CV-112-JFJ |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Dusty R. F. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.**     **General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden

shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

On August 21, 2018, Plaintiff, then a 52-year-old male, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits. R. 21, 183-92. Plaintiff alleges that he has been unable to work since May 26, 2018, due to right shoulder problems, arthritis, loss of sight in his right eye, hearing loss, right ankle problems, and high blood pressure.[2]

---

[2] Plaintiff alleged both May 25, 2018, and May 26, 2018, as his onset date in his applications. The ALJ identified May 26, 2018, as the alleged onset date, and Plaintiff does not challenge this portion of the decision.

3

R. 183, 187, 214. Plaintiff's claims for benefits were denied initially and on reconsideration. R. 89-121, 126-32. ALJ Brian Turner conducted an administrative hearing and issued a decision on July 30, 2020, denying benefits and finding Plaintiff not disabled. R. 21-31, 37-67. The Appeals Council denied review, and the ALJ's written decision represents the Commissioner's final decision for purposes of this appeal. R. 1-3; 20 C.F.R. §§ 404.981, 416.1481.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 26, 2018. R. 24. At step two, the ALJ found Plaintiff had the following severe impairments: bilateral sensorineural hearing loss; tinnitus; osteoarthritis of multiple joints, including the right shoulder, right ankle, and left knee; cervical spine degenerative disc disease; chronic kidney stones; cellulitis status post gunshot wound to the left buttock, groin, and scrotal region; and hypertension. *Id*. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 24-25.

The ALJ then summarized the medical source opinion evidence and the medical evidence in the record. R. 25-29. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following non-exertional limitations:

> [H]e can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He can never climb ladders or scaffolds. He can frequently reach overhead with his bilateral upper extremities. He can never be exposed to high, exposed places or moving mechanical parts. He can tolerate frequent exposure to extreme heat and extreme cold. He can tolerate a moderate noise intensity level as defined in the Dictionary of Occupational Titles and Selected Characteristics of Occupations.

R. 25.

At step four, the ALJ concluded that Plaintiff could not return to his past relevant work. R. 29. However, based on the testimony of a vocational expert ("VE"), he concluded at step five that Plaintiff could perform other work existing in significant numbers in the national economy such as routing clerk, small products assembler I, and ticket seller. R. 29-30. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 30. Accordingly, the ALJ concluded Plaintiff was not disabled. *Id*.

### III.  Issues

In challenging the Commissioner's denial of benefits, Plaintiff asserts the ALJ failed to resolve a conflict between the VE's testimony and the DOT regarding Plaintiff's RFC limitations on exposure to moving mechanical parts and noise. ECF No. 14. The Court agrees the ALJ committed legal error by failing to resolve a conflict between the VE's testimony and the DOT before relying on the VE's testimony as support for his determination that Plaintiff could perform the job of small products assembler I. The ALJ's error is harmful, because a significant number of jobs does not remain if the small products assembler I job is excluded from the jobs the ALJ identified at step five.

### IV.  Analysis

#### A.  Compatibility of RFC with Jobs Identified by VE

Plaintiff contends the ALJ erred in concluding that his RFC is compatible with the small products assembler I job because an unresolved conflict exists between the VE's testimony and

the DOT regarding Plaintiff's noise level limitation.³ An "ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) ("If the VE's … evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict."). "The conflict must be explained irrespective of how the conflict was identified, and regardless of whether the vocational expert testifies to a discrepancy." *Cain v. Berryhill*, No. 16-CV-640-GKF-FHM, 2018 WL 1247876, at *3 (N.D. Okla. Mar. 9, 2018) (quotations omitted).

At the administrative hearing, the ALJ posed a hypothetical question to the VE regarding an individual with the same age, work history, and education as Plaintiff who was:

> limited to work at the light level of exertion as defined in the regulations. But the individual could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. Never climb ladders or scaffolds. Could frequently reach overhead with

---

³ In his opening brief, Plaintiff asserted that the VE's testimony conflicted with the DOT because (1) the routing clerk and small products assembler I jobs require exposure to moving mechanical parts, and (2) the ticket seller job requires exposure to moderate noise. ECF No. 14 at 5-7. However, Plaintiff did not assert a noise level conflict with respect to the small products assembler I job until his reply brief. ECF No. 22 at 3-4. Although the Court has no obligation to consider arguments first raised in a reply brief, *see Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, 777 F.3d 1132, 1142 (10th Cir. 2015) (party waives issues and arguments raised for the first time in reply brief), the Court addresses the noise level conflict as to the small products assembler I job because Plaintiff raised both issues in his opening brief, albeit independently from one another. Furthermore, the ticket seller job involves a "Level 3 – Moderate" noise level, which is clearly consistent with the RFC limiting Plaintiff to a moderate noise intensity level. DOT 211.467-030. Thus, there is no noise level conflict with respect to the ticket seller job. There is, however, an obvious conflict between the small products assembler I job's "Level 4 – Loud" noise level and the RFC limitation for moderate noise, as explained in this decision. DOT 706.684-022. Accordingly, it appears that Plaintiff's inclusion of a noise level conflict regarding the ticket seller job rather than the small products assembler I job in his opening brief was a scrivener's error. By construing Plaintiff's briefing this way, the Court is aware the Commissioner will not have the opportunity to directly respond to Plaintiff's noise level argument concerning the small products assembler I job. However, considering the obvious noise-level conflict that exists, the only conceivable argument available to the Commissioner is that of harmless error. Because the Commissioner raised a harmless error argument in her response brief, the Court considered such argument with respect to the small products assembler I job, as explained in this decision.

>the bilateral upper extremities.  Could never be exposed to high exposed places or moving mechanical parts.  Could tolerate frequent exposure to extreme heat and extreme cold.  And can tolerate a moderate noise intensity level as defined in the DOT slash SCO.

R. 63.  The VE testified that such individual could not perform Plaintiff's past relevant work, but could perform the jobs of routing clerk, small products assembler I, and ticket seller.  R. 64-65.  When the ALJ asked the VE if his testimony was consistent with the DOT, he stated that it was consistent "with the DOT and its companion publication."[4]   R. 65.  Based on this testimony, the ALJ concluded Plaintiff could perform the jobs of routing clerk, small products assembler I, and ticket seller.  R. 29-30.  The ALJ found these jobs, which totaled 84,000 jobs, existed in significant numbers in the national economy.  R. 30.

Although the VE did not acknowledge a conflict between his testimony and the DOT, a conflict exists that the ALJ was required to resolve.  The DOT rates the "noise level" a worker is exposed to in the job environment using a five-point scale.  *See* SCO App. D.  The SCO clarifies that noise is categorized as very quiet (level 1), quiet (level 2), moderate (level 3), loud (level 4), or very loud (level 5).  *Id.*  According to the DOT, the small products assembler I job exposes workers to a "Level 4 – Loud" noise level.  DOT 706.684-022.  A loud noise level is facially inconsistent with Plaintiff's RFC limitation of a moderate noise level.  The ALJ neither acknowledged this noise-level conflict, nor elicited testimony from the VE to explain the discrepancy before relying on the VE's testimony at step five, thereby violating *Haddock* and SSR 00-4p.  Accordingly, the ALJ's step-five determination that Plaintiff can perform the job of small products assembler I is not supported by substantial evidence.

---

[4] The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") is the companion publication to the DOT.  *See* SSR 00-4p, at *2 ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.").

### B. Sufficient Number of Jobs in the National Economy

Even if the ALJ erred by failing to elicit a reasonable explanation for the apparent conflict between Plaintiff's RFC and the noise level tolerance required to perform the small products assembler I job, the ALJ's decision may still be upheld if the other identified positions exist in significant numbers in the national economy and do not conflict with Plaintiff's RFC. *See Cain*, 2018 WL 1247876, at *4 (collecting cases); 42 U.S.C. § 423(d)(2)(A). The VE identified two other jobs that Plaintiff could perform – routing clerk and ticket seller. R. 30, 64-65. The Commissioner argues these remaining jobs comprise a significant number of jobs in the national economy that Plaintiff can perform, even if the small products assembler I job is eliminated.

The VE testified there are 42,000 routing clerk jobs and 30,000 ticket seller jobs in the national economy. *Id.* The ALJ made no specific finding that these two jobs separately existed in significant numbers in the national economy, relying instead on the aggregate number of all three jobs – 84,000. R. 30. Therefore, to affirm the ALJ's decision, the Court would have to make the determination that the number of routing clerk and ticker seller jobs – 72,000 – constitutes a significant number of jobs in the national economy.

There is no magic number that qualifies as a "significant number" of jobs. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). The Tenth Circuit has made it clear that "judicial line-drawing" in the context of deciding that a particular number of jobs is significant under the circumstances "is inappropriate." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004). Rather, the evaluation of numerical significance, which "entails many fact-specific considerations requiring individualized evaluation," "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (quoting *Trimiar*, 966 F.2d at 1330) (quotation marks omitted). Only in "the right exceptional

circumstance," in which no reasonable administrative factfinder could have resolved the factual matter in any other way, is it appropriate for the district court "to supply a missing dispositive finding under the rubric of harmless error." *Id.* at 1145.

The Commissioner argues a judicial finding that 72,000 is a "significant number" of jobs is appropriate, citing two unpublished cases as support. *See Evans v. Colvin,* 640 F. App'x 731, 736 (10th Cir. 2016); *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (suggesting that 11,000 national jobs was a significant number).[5] However, the Tenth Circuit's unpublished opinions on this issue have been inconsistent. *Compare Norris v. Barnhart*, 197 F. App'x 771, 777 (10th Cir. 2006) (declining to find that two positions, which together comprised 190,000 to 210,000 jobs nationally, were present in significant numbers) *with Rogers*, 312 F. App'x at 142 (suggesting that 11,000 national jobs was a significant number). *See also Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (finding 1.34 million national jobs significant). Jurists in this district have declined to find that numbers in the 72,000 range constitute a significant number of jobs. *See, e.g., Michael A.N. v. Saul,* No. 18-CV-600-FHM, 2020 WL 417777, at *3 (N.D. Okla. Jan. 27, 2020) (reversing for the ALJ "to determine in the first instance whether 83,000 jobs in the national economy constitutes a significant enough number of jobs to support a finding of not disabled"); *Cain*, 2018 WL 1247876, at *5 n.7 (collecting cases to demonstrate that "the majority of courts in this district considering similar numbers [up to 195,000] decline to determine numerical significance as a matter of law").

Given the guidance from this district, as well as the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance and that the district court supply a dispositive

---

[5] The Commissioner also cites five unpublished decisions from other districts within the Tenth Circuit to support this theory. The Court is not persuaded by these out-of-district cases.

finding only in "exceptional" circumstances, the Court declines to apply harmless error to conclude that 72,000 jobs is a significant number as a matter of law. Stated differently, the Court cannot conclude that "no reasonable administrative factfinder could have resolved the factual matter in any other way." *Allen,* 357 F.3d at 1145. As a result, the ALJ's step-five error is not harmless.

**V.      Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 12th day of July, 2022.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**